[Crim. No. 12639. Fourth Dist., Div. Two. Apr. 26, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD LEE CRAWFORD, Defendant and Appellant.

592

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Cynthia Choy Ong, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert N. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Steven V. Adler, Harley D. Mayfield and Richard D. Hendlin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**\*—Defendant was charged in a four-count information with: (1) possession of a firearm by an ex-felon (Pen. Code, § 12021); (2) possession of proscribed weapons—a sawed-off shotgun (Pen. Code, § 12020, subd. (a)); (3) receiving stolen property (Pen. Code, § 496); and (4) possession for sale of a dangerous drug (Health & Saf. Code, § 11378). Additionally, it was alleged defendant had been convicted of armed robbery and kidnaping in 1967, possession of forged bills in 1970, and vehicle theft in 1972.

At the preliminary hearing, defendant moved on a limited basis to suppress evidence seized from his residence. The only ground asserted was violation of Federal Rules of Criminal Procedure, rule 41(c), which requires daytime service of a search warrant unless nighttime service is specifically authorized. This motion was denied. Thereafter, defendant was bound over and entered a not guilty plea in superior court. He moved to dismiss (Pen. Code, § 995) on counts 2, 3 and 4 on the basis that the evidence was insufficient to show possession of any contraband. This motion was granted as to counts 2 and 3, and denied with respect to count 4. The suppression motion was not renewed in superior court.

A jury subsequently convicted defendant of count 1 (possession of a firearm by an ex-felon) and acquitted him on count 4 (possession for sale of dangerous drugs). Defendant was denied probation, sentenced to the upper term (three years), and appeals.

---

\*Kaufman, Acting P. J., McDaniel, J., and Gardner, J.†

†Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

Pending appeal, defendant also filed a petition for habeas corpus (4 Crim. 12966) alleging he was afforded inadequate trial representation because counsel failed to move to suppress evidence on all available grounds and failed to renew the suppression motion in superior court. We denied defendant's petition for habeas corpus without prejudice to filing same in the superior court. Defendant petitioned the California Supreme Court for hearing. Hearing was granted, and the matter was retransferred to this court for hearing with a citation to *People* v. *Pope* (1979) 23 Cal.3d 412, 426, footnote 17 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]. Thereafter, this court issued an order to show cause why the petition should not be granted.

## THE FACTS

The pertinent facts are as follows:

On June 20, 1980, Secret Service Agent John Pavlick obtained a federal arrest warrant for defendant on a charge of uttering counterfeit money (18 U.S.C. § 472).[1] That warrant authorized arrest "at place of residence, 23301 Via Bahia, Mission Viejo, California . . . ." The warrant was executed with the assistance of an Orange County SWAT team at approximately 5:30 a.m. on June 24, 1980.

After knocking and announcing their purpose the officers entered the residence. As they walked through the house, one officer heard a "thrashing" sound and what sounded like a television set. He again yelled "Sheriff's Department, open up," and then forcibly kicked in the bedroom door. Inside, he found defendant naked at the foot of the bed, and ordered him to lie on the floor. Deputy Sheriff Jacquot ordered defendant's girl friend, who was dressed in a nightgown, to get out of bed and lie on the floor. Both were handcuffed. As Jacquot panned the room with a flashlight, he observed a handgun in a bedroom closet, and another handgun holstered at the foot of the bed.

After observing a .22 rifle in the stairwell, the police searched upstairs for their safety. In the northeast bedroom upstairs, an individual named Walter Begley was found asleep. On one side of his bed was a shotgun; on the other side was a rifle.

---

[1] Defendant was convicted in federal court of this offense. (See *United States* v. *Crawford* (9th Cir. 1981) 657 F.2d 1041.

Later that morning, the officers returned with a search warrant and seized a loaded .357 magnum revolver holstered at the foot of defendant's bed and a .22 luger semiautomatic from defendant's bedroom closet. A sifter, grain scale, and a plastic container with four knives inside it were also seized from defendant's bedroom. While searching the upstairs bedroom, a .38 caliber derringer was located between the mattress and box spring of Begley's bed, and a .357 magnum was found in a nightstand drawer. Additionally, 136 grams of methamphetamine and a gram scale were seized from Begley's bedroom.

At trial, the prosecution presented the two weapons found in the downstairs bedroom as the basis for its case-in-chief on count 1. Defendant and his girl friend denied ever seeing the .357 magnum found holstered to his bed. His girl friend testified the .22 luger in the closet was her gun, and that she had never seen defendant possess it. On rebuttal, the prosecution was allowed to introduce into evidence the two weapons found upstairs over defendant's objection that this evidence did not constitute proper "impeachment." Defendant was convicted on the weapons charge and acquitted on the drug possession charge.

### Discussion

Two major issues are raised in this appeal: (1) trial counsel's failure to properly present and renew a suppression motion; and (2) the trial court's failure to give a *sua sponte* jury instruction. ■ In our view, the jury instruction contention is meritorious and dispositive. We reverse on that basis.

Four handguns were introduced into evidence at trial—two from defendant's bedroom and two from Begley's bedroom.

The jury was instructed that in order to find defendant guilty, they must find he possessed "one or more handguns." Additionally, the jurors were instructed that "in order to reach a verdict, all twelve jurors must agree as to the decision." However, the jurors were *not* instructed they must unanimously agree as to which one or more of the guns defendant possessed. The information did not specify which gun(s) defendant was charged with possessing.

Defendant complains this violated the constitutional guarantee of a unanimous verdict in criminal cases (Cal. Const., art. I, § 16; *People v. Wheeler* (1978) 22 Cal.3d 258, 265 [148 Cal.Rptr. 890, 583 P.2d

748]), and urges that CALJIC No. 17.01 or a similar instruction should have been given *sua sponte*. We agree.[2]

■ A trial court must instruct *sua sponte* on those general principles of law which are ". . . closely and openly connected with the facts before the court, and which are necessary for a jury's understanding of the case." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].) Here, an instruction similar to CALJIC No. 17.01 was essential to assure the constitutional guarantee of juror unanimity. Otherwise, certain jurors might have been convinced defendant possessed one weapon, while others were convinced he possessed another weapon without all jurors at a minimum believing he possessed any one weapon. It is this unacceptable possibility which taints the verdict in this case.

■ The Attorney General relies on *People* v. *Pupillo* (1929) 100 Cal.App. 559 [280 P. 545]. *Puppillo* held that the defendant could be convicted of only one offense of illegal possession of concealable firearms even though at the time of his arrest officers discovered both a .32 caliber Smith and Wesson revolver and a .22 caliber Harrington and Richards revolver in his house. However, characterizing the simultaneous, constructive possession of two guns as only one criminal offense does not eliminate the requirement that the jury agree unanimously on the act constituting the offense. *Puppillo* did not address, much less resolve, the instructional problem.

CALJIC No. 17.01's use note states: "This instruction designed for use only for violation of a statute under which any of several different acts is sufficient to constitute the offense." Although the phrase "different acts" can refer to statutes which may be violated by differing modes of conduct (*People* v. *Scofield* (1928) 203 Cal. 703, 709-710 [265 P. 914] [five different ways to violate hit and run statute]), the phrase also is applicable to separate but similar unlawful acts. (*People* v. *McNeill* (1980) 112 Cal.App.3d 330, 335 [169 Cal.Rptr. 313] [four similar acts of assault on different victims].)

---

[2]Appellant suggests the appropriate, omitted instruction is CALJIC No. 17.01, which states: "The defendant is charged with the offense of _____ . He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

Certain situations exist in which CALJIC No. 17.01 should not be given. For example, the use note states, "Do not use this instruction where there is but one offense being prosecuted under different theories." (*People* v. *Failla* (1966) 64 Cal.2d 560 [51 Cal.Rptr. 103, 414 P.2d 39] [burglary prosecuted under theory defendant intended two separate felonies upon entry].) A variety of cases as well as the comment to CALJIC No. 17.01 reveal a second situation: where the offense defendant is charged with constitutes a continuing course of conduct over a period of time, rather than a particular act on a specified date, no instruction is appropriate. (*People* v. *Lewis* (1978) 77 Cal.App.3d 455 [143 Cal.Rptr. 587, 3 A.L.R.4th 1185] [pimping]; *People* v. *Ewing* (1977) 72 Cal.App.3d 714 [140 Cal.Rptr. 299] [child abuse].)

The Attorney General urges that Penal Code section 12021 is a statute of that class punishing a continuing course of conduct as one offense.[3]

In *People* v. *Warren* (1940) 16 Cal.2d 103, 112 [104 P.2d 1024], discussing the predecessor statute to section 12021, our Supreme Court observed: "The statute does not provide that it is an offense for each day that the ex-convict is in possession of the weapon, hence such possession *may be* continuous and constitute but one offense, especially where, as here, the information does not charge the possession on a specific date or on a particular occasion." (Italics added.)

*Warren* is not controlling in this instance, however. In *Warren* evidence was introduced to show possession by defendant of a revolver on three separate days, however the information did not specify the day the statute was violated. *Warren* held the prosecution was not required to elect which of the three dates it intended to rely on for the conviction, since "possession may be continuous, and but one offense." We note *Warren* did not say possession must be continuous, only that it *may be* continuous under a given set of facts. The critical distinction between *Warren* and the case at bench is that here the multiple possessory acts were simultaneous in time, and not charged or proven to be continuing offenses over a period of time. In sum, *Warren* did not: (a)

---

[3]Penal Code section 12021, subdivision (a) provides: "Any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country, or who is addicted to the use of any narcotic drug, who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, and shall be punishable by imprisonment in the state prison, or in a county jail not exceeding one year or by a fine not exceeding five hundred dollars ($500), or by both."

concern multiple acts of simultaneous possession, or (b) expressly decide whether or not CALJIC No. 17.01 or a similar instruction must be given *sua sponte* under the circumstances in (a).

We find closely analogous the situation which arose in *People v. McNeill* (1980) 112 Cal.App.3d 330 [169 Cal.Rptr. 313]. In *McNeill* some sloppy pleading led to defendant being incorrectly charged in one count of the information with assault on each of four different victims. The pleading error went unchallenged by demurrer, and was waived. Unfortunately, the error again cropped up when it came time to instruct the jury. As in our case, the jury was told it must render a unanimous verdict, but the jurors were not instructed that at a minimum they must unanimously agree as to a single individual who was assaulted. *McNeill* held: "The possibility that the jurors may have come to different conclusions as to the identity of the assault victim vitiates the constitutionally required assurance of juror unanimity as to the assault conviction. While it is of course possible that the jurors agreed unanimously as to a particular victim of the assault, such agreement would necessarily be fortuitous in the absence of a proper instruction." (112 Cal.App.3d 330, 335-336.)

Indeed, the need for CALJIC No. 17.01 or a similar instruction is even stronger under the facts of this case than *McNeill.* The four acts of assault in *McNeill* involved the defendant shooting a gun in rapid fire fashion at four individuals standing in close proximity to one another. The facts surrounding each offense were basically the same. By contrast, the various acts of possession in this case involve a variety of handguns located in various portions of the house. Moreover, the evidence presented at trial, if believed, suggested the circumstances surrounding the .22 luger were different than those surrounding either of the .357 magnums, nor were the relevant indicia of possession as to each .357 magnum similar. Certain jurors might quite easily have been persuaded beyond a reasonable doubt that appellant possessed one gun, but not another.

The balance of the most pertinent cases relied on by the Attorney General are distinguishable.

In *People v. Wright* (1968) 268 Cal.App.2d 196 [73 Cal.Rptr. 692], the defendant was sitting in a car atop the Dana Point bluffs with some friends. A police officer approached. One of the passengers—not defendant—alighted from the vehicle, and threw several marijuana joints

over the bluff. Defendant and the other passengers were then searched. Three marijuana joints were found in the car. The two tossed over the bluff were later recovered. Defendant was convicted of possession of marijuana.

On appeal, defendant urged that the trial court should have *sua sponte* instructed the jury that in order to find him guilty they had to agree he possessed either the three joints in the car, the two on the cliff, or both. The point was rejected. *Wright* held: " . . . it was not necessary to instruct the jury its members must all agree which specific items of narcotics Wright possessed so long as they all agreed at the time and place he possessed separately, jointly, or constructively, a usable amount of marijuana." (268 Cal.App.2d 196, 198.)

However, a critical point not contained in *Wright*'s express holding is made in that opinion: "The act of possession here was not fragmented as to time or space. The evidence showed all of the marijuana came from the car, some of it remained there and some was thrown over the cliff." (*Id.*) Occupants of the vehicle actually or constructively possessed all the joints until the moment two joints were severed and thrown over the cliff.

The acts of constructive possession involving the four guns are different. While possession of all guns was not fragmented as to time, the possession was fragmented as to space. Guns were in different parts of the house; the evidence showed unique facts surrounding the possessory aspect of each weapon.

Similarly, *People v. Heideman* (1976) 58 Cal.App.3d 321 [130 Cal.Rptr. 349], a case which cites *Wright* approvingly, also is distinguishable. In that case defendant made an uncontroverted admission he possessed certain explosives. Therefore, it was simply unnecessary to instruct the jury it must agree which one of the specific items he possessed. (58 Cal.App.3d at pp. 332-333.)

A fair effort at harmonizing *McNeill* and *Wright* leads to the conclusion that CALJIC No. 17.01 should be given where the acts of possession were not factually identical. Conversely, where the acts were substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place, the instruction is not necessary to the jury's understanding of the case. Under the facts in the case at bench the distinctive facts surrounding defendant's "possession"

of each gun required the giving of CALJIC No. 17.01 or a similar instruction.

The Attorney General urges that even if the trial court was obligated to so instruct, the error is harmless on these facts. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) We cannot agree. Even if we were to speculate from the jury's acquittal verdict on the possession of drugs charge that the jury believed defendant was unassociated with anything in Begley's upstairs bedroom, that would still leave the two weapons in defendant's bedroom. There is no way of knowing whether all 12 jurors believed defendant constructively possessed either of those guns. In short, there is still one too many guns for the error to be harmless.[4]

### DISPOSITION

Accordingly, the judgment is reversed. In addition, in the hope of furthering the efficient administration of justice, the trial court is directed to permit defendant to make a suppression motion on all desired grounds within 60 days after the trial court regains jurisdiction in this matter. This will moot the presently pending habeas corpus proceeding.

Respondent's petition for a hearing by the Supreme Court was denied June 23, 1982. Mosk, J., was of the opinion that the petition should be granted.

---

[4]We make one further observation pertinent to any retrial. Apparently the two handguns found upstairs were admitted as evidence of the charged offense for the first time on rebuttal. Were the case not otherwise to be reversed this would raise a serious question concerning the order of proof in this case. (See Pen. Code, § 1093, subd. 4; *People* v. *Carter* (1957) 48 Cal.2d 737 [312 P.2d 665]; *People* v. *Porterfield* (1960) 186 Cal. App.2d 149 [8 Cal.Rptr. 897].)