Filed 6/2/16  P. v. Valdez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BAYRON VALDEZ,<br><br>    Defendant and Appellant. | F067927/F068411<br><br>(Fresno Super. Ct. No. F12909692)<br><br>**OPINION** |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARIA ANTONIA FRANCO,<br><br>    Defendant and Appellant. | (Fresno Super. Ct. No. F09902180) |

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant, Bayron Valdez.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant, Maria Antonia Franco.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In an information filed January 24, 2013 (case No. F12909692), defendants Maria Antonia Franco (Franco) and Bayron Valdez (Valdez) were jointly charged with second degree robbery of Isai Lopez (Lopez) (Pen. Code, § 211 [count 1])[1] and attempted murder of Lopez (§§ 187, subd. (a), 664 [count 2]); Franco was separately charged with one count of firearm possession by a felon (§ 29800, subd. (a)(1) [count 3]); and Valdez was separately charged with two counts of firearm possession by a felon (§ 29800, subd. (a)(1) [counts 4 and 5]).[2] In connection with counts 1 and 2, the information alleged Franco and Valdez personally and intentionally discharged a firearm and proximately caused great bodily injury to Lopez. (§ 12022.53, subd. (d).) The information further alleged Valdez served a prior separate prison term.[3] (§ 667.5.) Following a trial, the jury found defendants guilty as charged and found true the firearm discharge allegation.

Franco was sentenced to nine years plus 25 years to life for proximately causing great bodily injury with a firearm on count 2 and a concurrent three years on count 3. The trial court also imposed five years plus 25 years to life for proximately causing great

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2] As to counts 3, 4, and 5, the parties stipulated each defendant was previously convicted of a felony.

In an earlier case (case No. F09902180), Franco pleaded guilty to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and was placed on Proposition 36 probation (§ 1210.1). At a July 27, 2009, review hearing, she admitted she failed to report for drug testing. Franco then failed to appear at an August 31, 2009, review hearing. A probation violation hearing was ordered to trail case No. F12909692.

[3] Valdez admitted this allegation.

2.

bodily injury with a firearm on count 1 but stayed execution of punishment. Franco was ordered to pay a probation report fee of $296.[4]

Valdez was sentenced to nine years plus 25 years to life for proximately causing great bodily injury with a firearm and one year for serving a prior separate prison term on count 2, a concurrent three years on count 4, and a concurrent three years on count 5. The trial court also imposed five years plus 25 years to life for proximately causing great bodily injury with a firearm on count 1 but stayed execution of punishment.

*Franco appeal*

On appeal, Franco contends (1) the firearm discharge enhancement on counts 1 and 2 should be reversed because the pattern jury instruction issued by the trial court, i.e., CALCRIM No. 3149, did not adequately define proximate causation; (2) the firearm discharge enhancement on counts 1 and 2 should be reversed because the prosecution did not prove she proximately caused great bodily injury to Lopez; and (3) the court erroneously ordered her to pay a probation report fee.[5]

*Valdez appeal*

On appeal, Valdez contends (1) count 4 should be reversed because the trial court did not instruct the jury to unanimously agree on the specific firearm he possessed on the date of the shooting; (2) count 5 should be reversed because the underlying offense, i.e., firearm possession by a felon, was a single continuing crime for which he was already convicted on count 4; (3) execution of punishment on count 5 should be stayed because the underlying offense, i.e., firearm possession by a felon, arose from an indivisible

---

[4] Thereafter, the court conducted a probation violation hearing, terminated Franco's Proposition 36 probation, and imposed a concurrent two-year sentence for her conviction in Case No. F09902180. (See *ante*, fn. 2.)

[5] Valdez joins in Franco's arguments "to the extent … he can benefit from such arguments." We evaluated these arguments (see pp. 5–12, *post*) and did not find any of them particularly helpful to Valdez.

course of criminal conduct; and (4) a clerical error in the abstract of judgment should be corrected.[6]

For the reasons set forth in this opinion, we (1) reverse Valdez's conviction on count 5; (2) find a clerical error in the abstract of judgment concerning the offense underlying count 1, which must be corrected; and (3) reject defendants' remaining contentions and affirm the judgment in all other respects.

## STATEMENT OF FACTS

Lopez[7] first encountered Valdez in October 2010. The men became "good friends" and met regularly to use alcohol and methamphetamine. Valdez later introduced Lopez to Franco.

Sometime after midnight on December 2, 2010, Lopez paid for a room at the Parkland Motel in Fresno, where he, Valdez, Franco, and Aimee Doughty drank beer and smoked methamphetamine. At some point, Lopez left the motel, picked up a female acquaintance, drove her to his uncle's house, and received what appeared to be a $20 bill as recompense from her. Upon his return, in the presence of Valdez, Franco, and Doughty, Lopez compared the newly acquired bill to $500 of his own cash and determined the former was a counterfeit. After Lopez placed the money in his pocket, he observed Valdez and Franco chatting inside the walk-in closet. Once Valdez moved to a different part of the room, Lopez approached Franco, who had remained in the closet, and briefly spoke with her. When Lopez exited the closet, Valdez said, " 'All right,' " and shot Lopez in the right upper abdomen from 17 feet away. Franco then shot Lopez in his

---

[6] Franco initially joined in Valdez's arguments but later conceded they were "unique to [Valdez]" and did not benefit her.

[7] At the time of the trial, Lopez was in custody on unrelated charges. He was given use immunity in exchange for his testimony.

left side, below the ribcage, at close range.[8]  Valdez said to Lopez, " 'Give me your money, your dope, and your car keys.' "  Lopez relinquished his money, keys, cell phone, and lottery tickets.  Thereafter, Valdez, Franco, and Doughty departed.  Lopez tried to use the room's landline phone to call for help but discovered "the cord was ripped off the wall."  He left the room, knocked on nearby doors, and pleaded for assistance.  Lopez eventually collapsed.

Meanwhile, the motel's security guard, who had heard gunfire and witnessed three people fleeing the premises, called 911.  Police officers and paramedics arrived on the scene at around 4:00 a.m.  Lopez was transported to Community Regional Medical Center, where he presented two gunshot wounds and underwent surgery to repair damage to his small intestine and vena cava.  Dr. Krista Kaups, the general trauma and critical care surgeon who performed the operation, opined these injuries were so severe Lopez would have died without treatment.  X-rays exhibited a single bullet lodged in front of the spinal column and below the ribcage.  Dr. Kaups concluded one of the wounds was the entrance wound while the other wound "may well have been a graze wound, … where [another] bullet didn't actually enter [Lopez], but … just nicked the skin."  At the time she treated Lopez, Dr. Kaups acknowledged she "didn't spend a lot of time figuring out which wound was the source of where the injuries came from."

On December 11, 2010, following surveillance of Valdez's mother's home, police officers came across Valdez, who attempted to escape on foot.  During the chase, Valdez discarded a loaded revolver.  The officers ultimately apprehended Valdez and retrieved the gun.

---

[8] Lopez originally reported Valdez and Franco possessed a semiautomatic and a revolver, respectively.  At the trial, however, Lopez testified Valdez fired the revolver while Franco fired the semiautomatic.

DISCUSSION

## I.      CALCRIM No. 3149 Sufficiently Defines Proximate Causation

### a. *Background*

Prior to jury deliberations, the court instructed the jury with CALCRIM No. 3149 (Personally Used Firearm:  Intentional Discharge Causing Injury or Death) as follows:

> "Now, if you find a defendant guilty of the crimes charged in Counts One or Two, you must then decide whether[,] for each of those crimes[,] the People have proved the additional allegation that the defendant personally and intentionally discharged a firearm during that crime causing great bodily injury.  You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime.

> "To prove this allegation the People must prove beyond a reasonable doubt that[:] one, the defendant personally discharged a firearm during the commission of that crime[;] [t]wo, the defendant intended to discharge the firearm[;] and, three, the defendant's act caused great bodily injury to a person.  [¶] … [¶]

> "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.

> "An act causes great bodily injury if the injury is the direct, natural[,] and probable consequence of the act and the injury would not have happened without the act.  [¶]  A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable[,] consider all of the circumstances established by the evidence.[9]

> "There may be more than one cause of great bodily injury.  An act causes injury only if it is a substantial factor in causing the injury.  A substantial factor is more than a trivial or remote factor.  However, it does not need to be the only factor that causes injury.[10]

---

[9] The Bench Notes to CALCRIM No. 3149 specify:  "If causation is at issue, the court has a sua sponte duty to instruct on proximate cause [citation]; give the bracketed paragraph that begins with 'An act causes ….' "  (Boldface omitted.)

[10] The Bench Notes to CALCRIM No. 3149 specify:  "If there is evidence of multiple potential causes, the court should also give the bracketed paragraph that begins with 'There may be more than one cause ….'  [Citation.]"

"The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved."

For the first time on appeal, Franco objects to CALCRIM No. 3149 on the grounds the instruction did not adequately define proximate causation.

### b. *Standard of review*

"A claim of instructional error is reviewed de novo." (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 759, citing *People v. Guiuan* (1998) 18 Cal.4th 558, 569–570.) " 'In considering a claim of instructional error[,] we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights. In making this determination[,] we consider the specific language under challenge and, if necessary, the instructions as a whole. [Citation.]' [Citations.]" (*People v. Lopez* (2011) 199 Cal.App.4th 1297, 1305.)

### c. *Analysis*

At the outset, while Franco did not object to CALCRIM No. 3149 below, under section 1259, an appellate court may review "*any instruction given*, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby.' " (Accord, *People v. Brown* (2003) 31 Cal.4th 518, 539, fn. 7, italics added in original; *People v. Lopez*, *supra*, 199 Cal.App.4th at p. 1305, fn. 35.) "The cases equate 'substantial rights' with reversible error, i.e., did the error result in a miscarriage of justice? [Citations.]" (*People v. Arredondo* (1975) 52 Cal.App.3d 973, 978; see *People v. Watson* (1956) 46 Cal.2d 818, 836 ["[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."].) " 'Ascertaining whether claimed instructional error affected the substantial

rights of the defendant necessarily requires an examination of the merits of the claim ….'
[Citation.]" (*People v. Lawrence* (2009) 177 Cal.App.4th 547, 553, fn. 11.)[11]

Pursuant to subdivision (d) of section 12022.53, "any person who, in the commission of a felony specified in subdivision (a),[12] … personally and intentionally discharges a firearm and *proximately causes* great bodily injury … to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." (Italics added.)

"To establish … causal connection and for criminal liability to attach, the evidence must show that the defendant's conduct was both the actual and the legal, or proximate, cause of the … injuries" (*People v. Marlin* (2004) 124 Cal.App.4th 559, 569), meaning (1) " 'the defendant's conduct must be the "but-for" cause (sometimes called the "cause in fact") of the forbidden result' " (*ibid.*); and (2) " 'the defendant may fairly be held responsible for the actual result' " (*ibid.*). In other words, "the cause of the harm not only must be direct, but also [must] not [be] so remote as to fail to constitute the natural and probable consequence of the defendant's act." (*People v. Roberts* (1992) 2 Cal.4th 271, 319; see *id.* at p. 320, fn. 11 ["[T]here is no bright line demarcating a legally sufficient proximate cause from one that is too remote."].) In addition, "there may be multiple proximate causes of [harm], even where there is only one known actual or direct cause …." (*People v. Sanchez* (2001) 26 Cal.4th 834, 846.) " ' "When the conduct of two or more persons contributes concurrently as the proximate cause of [harm], the conduct of

---

**11** In her brief, the Attorney General cites the general rule that "a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language. [Citations.]" (Accord, *People v. Andrews* (1989) 49 Cal.3d 200, 218.) However, in our view, this rule does not apply here because Franco's argument "go[es] beyond a claim CALCRIM No[]. [3149] … w[as] merely incomplete, and instead assert[s] [it] w[as] not 'correct in law.' " (*People v. Lawrence*, *supra*, 177 Cal.App.4th at p. 554, fn. 11; accord, *People v. Franco* (2009) 180 Cal.App.4th 713, 719.)

**12** Qualifying felonies include robbery (§ 12022.53, subd. (a)(4)) and attempted murder (*id.*, subds. (a)(1), (18)).

each is a proximate cause … if that conduct was also a substantial factor contributing to the result…." ' [Citation.]" (*Id.* at p. 847, italics omitted; see *People v. Jennings* (2010) 50 Cal.4th 616, 643 [" '[T]he defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical.' [Citation.]"].)

We have examined CALCRIM No. 3149 (see *ante*, at pp. 5−6) and conclude its definition of proximate causation comports with the law. (See *People v. Runnion* (1994) 30 Cal.App.4th 852, 858 ["[T]he trial court's obligation is to state the law correctly."].) Since a jury is "presumed to understand and follow the court's instructions" (*People v. Holt* (1997) 15 Cal.4th 619, 662), we cannot conceive a reasonable likelihood it applied CALCRIM No. 3149 in an improper manner. Therefore, we find no instructional error.

Franco contends CALCRIM No. 3149's definition of proximate causation is deficient because the verbiage is not identical to that found in CALJIC No. 17.19.5 (Intentional and Personal Discharge of Firearm/Great Bodily Injury), which was found to "correctly define proximate causation." (*People v. Bland* (2002) 28 Cal.4th 313, 336, 338 (*Bland*).) CALJIC No. 17.19.5 defines proximate causation as follows:

> " 'A proximate cause of great bodily injury or death is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the great bodily injury or death and without which the great bodily injury or death would not have occurred.' " (Accord, *Bland*, *supra*, 28 Cal.4th at p. 335, brackets omitted in original.)

Of paramount concern to Franco is CALCRIM No. 3149's omission of the phrase " 'sets in motion a chain of events.' " She maintains this phrase establishes the "chronological or temporal requirement to causation" and its absence "lessen[s], even essentially eliminate[s], the causa[tion] requirement." We disagree as we see nothing in the language of CALCRIM No. 3149 suggesting (1) the jury could attribute great bodily injury to a subsequent act; or (2) proximate causation is not an essential element of the firearm discharge enhancement.

9.

## II. Substantial Evidence Demonstrates Franco Proximately Caused Great Bodily Injury to Lopez

### a. *Background*

In her summation, the prosecutor, Lindsey Bittner, discussed the firearm discharge allegation in connection with counts 1 and 2 and argued defendants together proximately caused great bodily injury to Lopez:

> "There's an enhancement here as to Count One, … [s]ection 12022.53[, subdivision ](d). This basically means that each defendant used a gun when they committed that robbery. Personal discharge of a gun during a crime…. [P]retty clear [Lopez] was shot first by [Valdez] in the torso. He's looking right at [Valdez], … Lopez is, and then he turns to his left … and sees [Franco] and actually feels the cold metal against his side and is some time shortly thereafter shot. Intentional discharge, you don't point a gun and fire it at someone if you don't intend to hit [him].

> "And the defendant's act caused … great bodily injury. That is defined in the law, folks. [Lopez] would have died if he hadn't gotten medical attention. And which bullet caused which wound is not relevant…. [Y]ou saw the scars and you heard about the procedures, both of them. There was [great bodily injury].

> "You'll read CALCRIM [No.] 3149. It tells you what I need to prove to you beyond a reasonable doubt, a burden I embrace here. There may be more than one cause of [great bodily injury], exactly what I was just saying…. These defendants acting together caused [great bodily injury] to Isai Lopez. And that causes [great bodily injury] if it is a substantial factor, are the words used, in causing the injury, and substantial factor is defined under this jury instruction … as more than a remote or trivial factor. Here, these two defendants' actions are the only factor, folks. I already spoke about the evidence here, and both defendants are guilty of this enhancement on Count One. [¶] … [¶]

> "Count Two enhancement. Same thing here, folks, same elements. Defendant's act caused [great bodily injury]. I don't have to show … which bullet caused [great bodily injury]. They both engaged in something that was a substantial factor in [Lopez's] injury, same analysis …."

### b. *Standard of review*

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to

10.

determine whether it contains substantial evidence – that is, evidence that is reasonable, credible, and of solid value – from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.)  "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]" (*Id.* at p. 60.)  "Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis what[so]ever is there sufficient substantial evidence to support it.  [Citation.]" (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)  "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]" (*People v. Albillar*, *supra*, at p. 60.)

"Although we must ensure the evidence is reasonable, credible, and of solid value,… it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314.)  "Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" (*Ibid.*)

### c. *Analysis*

As previously noted, "any person who, in the commission of a [qualifying] felony … personally and intentionally discharges a firearm and proximately causes great bodily injury … to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." (§ 12022.53, subd. (d).)  On appeal, Franco admits she shot Lopez while Valdez does not deny he shot Lopez.  The record, which we view in the light most favorable to the judgment, establishes Valdez fired first from a distance of 17 feet, Franco fired second at close

range, and Lopez sustained great bodily injury in the form of severe damage to his small intestine and vena cava. Dr. Kaups, the surgeon, opined Lopez would have died without treatment. She testified Lopez presented two gunshot wounds in the right upper abdomen and in the left side, respectively. One was the entrance wound and the other was a graze wound. However, Dr. Kaups could not identify whether the right upper abdomen wound inflicted by Valdez or the left side wound inflicted by Franco was the entrance wound, i.e., "the source of where [Lopez's] injuries came from."

Franco contends the section 12022.53, subdivision (d), firearm discharge enhancement on counts 1 and 2 should be reversed because the prosecution did not prove she proximately caused great bodily injury. She asserts Valdez's initial bullet inflicted Lopez's abdominal damage whereas her bullet "merely grazed or nicked [Lopez's] skin," resulting in a trivial surface wound. As discussed, however, the evidence is inconclusive on this point.

In the event it can be shown both defendants fired gunshots at a victim and a gunshot was the actual, direct cause of the victim's injury, but it cannot be determined which defendant fired the harm-inflicting bullet, a defendant is criminally liable so long as his or her conduct was a substantial factor contributing to the injury. (*People v. Sanchez*, *supra*, 26 Cal.4th at pp. 845–849; see *People v. Jennings*, *supra*, 50 Cal.4th at p. 644 ["[T]he 'substantial factor' rule for concurrent causes 'was developed primarily for cases in which application of the but-for rule would allow each defendant to escape responsibility because the conduct of one or more others would have been sufficient to produce the same results.' [Citation.]"]; see also *Bland*, *supra*, 28 Cal.4th at p. 337 ["A person can proximately cause a gunshot injury without personally firing the weapon that discharged the harm-inflicting bullet."].) Here, Franco shot Lopez at close range immediately after Valdez discharged the initial shot from across the motel room. Her act cannot simply be dismissed as insignificant, theoretical, trivial, or remote.

## III. Franco Forfeited her Argument the Trial Court Erroneously Ordered her to Pay a Probation Report Fee

For the first time on appeal, Franco challenges the trial court's imposition of a $296 probation report fee pursuant to section 1203.1b. However, the California Supreme Court recently held a defendant who fails to contest the imposition of fees pursuant to section 1203.1b before the trial court forfeits the claim on appeal. (*People v. Trujillo* (2015) 60 Cal.4th 850.) As Franco herself acknowledges, we are bound by the doctrine

13.

of stare decisis to follow this decision.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

**IV.    The Trial Court Was Not Required to Instruct the Jury to Unanimously Agree on Whether Valdez Possessed a Revolver or a Semiautomatic on December 2, 2010**

*a.  Background*

At the jury instruction conference, the trial court, prosecutor Bittner, Franco's trial attorney, Linden Lindahl, and Valdez's trial attorney, Eric Green, discussed whether CALCRIM No. 2511 (Possession of Firearm by Person Prohibited Due to Conviction − Stipulation to Conviction), which would be given to the jury, should include an optional paragraph on unanimity:[13]

> "THE COURT:  Okay.  We're talking about this unanimity [paragraph] ….  [¶]  [I]t doesn't really apply because, I mean, that's what the issue is here.  What we have in our case is a conflict in the evidence as to which firearm is in whose hands.
>
> "MR. GREEN:  I think it should be given.
>
> "MR. LINDAHL:  I agree.
>
> "THE COURT:  Let me just make a record as to what the conflict is. We have a revolver and we have a semiautomatic firearm described in the evidence.  [V]arious statements described the witness[] alternatively plac[ing] the revolver in each defendant's hand and the semiautomatic in each defendant's hand.  This instruction would seem to tell me that even if it's a situation where it's not alleged that multiple firearms were possessed by defendants that … even without that allegation it is still required that the

---

[13] The paragraph in question reads:

"The People allege that the defendant (owned/purchased/received/possessed) the following firearms: … <*insert description of each firearm when multiple firearms alleged*>.  You may not find the defendant guilty unless all of you agree that the People have proved that the defendant (owned/purchased/received/possessed) at least one of the firearms, and you all agree on which firearm (he/she) (owned/purchased/received/possessed)."  (Some brackets omitted.)

14.

jury be unanimous to find that at least one of the firearms was possessed and … agree on which firearm it was. I think that's what's required.

"MR. LINDAHL: Based on the evidence I agree with the Court's analysis.

"MS. BITTNER: For the record, your Honor, I would disagree with that because I do think … this is more intended [for a] defendant having multiple guns…. [¶] … [¶]

"THE COURT: …. And, actually, you know, I have a real problem with this because the conflict does not relate to this issue. It doesn't matter which firearm is in either one's hands on December 2nd. If … the jury finds that … either one had a firearm …, then [it] can find the defendant guilty.

"MS. BITTNER: Yes.

"THE COURT: It doesn't matter which gun it is. [¶] … [¶]

"MS. BITTNER: I agree with the Court that to be a felon in possession … [the jury is] not required under [section] 29800 to make a determination of who had which gun.

"THE COURT: Right. [¶] … [¶] All [the jury] ha[s] to do is … be unanimous in finding … a defendant possessed a gun at that time.

"MS. BITTNER: I agree with that and I think on that basis this [paragraph] would just confuse and mislead [the jury].

"MR. LINDAHL: But to be a fly on the wall in the jury room. What if six go, 'Oh, yeah, I believe he had a semiauto,' and the other six go, 'Oh, yeah, I believe he had a revolver.'

"MR. GREEN: Then, he's an ex-felon in possession of a gun.

"MS. BITTNER: It doesn't matter.

"THE COURT: Either way. I think ultimately that's what it comes down to.

"MR. LINDAHL: All right.

"THE COURT: Okay. Well, I'm scratching that part of that paragraph.

"MR. GREEN: Okay. [¶] … [¶]

15.

"MS. BITTNER: So you are … striking that paragraph, Judge?

"THE COURT: I am striking that paragraph.

"MS. BITTNER: Okay, Thank you."

In her summation, Bittner asserted:

"Count Three, felon in possession of a gun …. Section 29800, three elements. In Count Three, this is only as to Ms. Franco. I have to show that she possessed a firearm. Notice it doesn't say, 'revolver,' or 'semiautomatic.' It says, 'A firearm….' This is on the date of the incident…. The type of gun doesn't matter. What matters is that she had a gun and that she used it….

"Count Four, same elements. This time Mr. Valdez. Pay attention here, folks, to the date of the offense, December 2nd, 2010. Again, it doesn't matter which gun he had…."

b. *Standard of review*  (See *ante*, at p. 7.)

c. *Analysis*

"In a criminal case, a jury verdict must be unanimous. [Citations.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*); see Cal. Const., art. I, § 16.) "Additionally, the jury must agree unanimously the defendant is guilty of a specific crime." (*Russo*, *supra*, at p. 1132, italics omitted.) "Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*Ibid.*) " 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.]" (*Ibid.*, italics in original; see *People v. Hernandez* (2013) 217 Cal.App.4th 559, 562–563 [reversing a defendant's conviction for firearm possession because the evidence showed two distinct instances, separated by time and space, in which the defendant could have possessed a firearm; the prosecutor failed to elect which occasion constituted the charged offense; and the trial court failed to instruct the jury on unanimity].)

16.

As to count 4, the information alleged Valdez, a convicted felon, possessed a firearm on the morning of December 2, 2010. The record establishes a single instance on that date in which Valdez could have possessed a firearm. Lopez, who offered conflicting statements before and during trial about the type of gun Valdez wielded, i.e., either a revolver or a semiautomatic, never suggested Valdez actually possessed both a revolver and a semiautomatic. Furthermore, there was no evidence Valdez exercised dominion or control over Franco's weapon. (See *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1052; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1029–1030; *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417 [outlining doctrine of constructive possession]).[14] The question of whether Valdez wielded a revolver or a semiautomatic "merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime." (*Russo*, *supra*, 25 Cal.4th at p. 1135.) In such a situation, a unanimity instruction is not required. (*Id.* at pp. 1132, 1135; see *People v. Saddler* (1979) 24 Cal.3d 671, 681 ["The trial court has the duty … 'to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury ….' [Citation.].])

---

[14] Even assuming arguendo there was evidence Valdez actually possessed one firearm and constructively possessed Franco's, a unanimity instruction would not be required because these acts were not temporally and spatially fragmented. (Bench Notes to CALCRIM No. 2511, citing *People v. Wolfe* (2003) 114 Cal.App.4th 177, 184–185; cf. *People v. Hernandez*, *supra*, 217 Cal.App.4th at pp. 564–566, 574–576 [firearm possession at victim's home separate in time and space from firearm possession at gas station roughly one hour later]; *People v. Crawford* (1982) 131 Cal.App.3d 591, 549–595, 599 [defendant's constructive possessions of guns retrieved from his bedroom and guestroom, respectively, were fragmented as to space]; see also *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1375–1376 [although there was evidence from which the jury could have reasonably inferred the defendant either actually possessed a gun, actually possessed a Taser, constructively possessed a gun, or constructively possessed a Taser, these scenarios amounted to "theories" of a single discrete crime or allegation rather than multiple discrete crimes or allegations].)

17.

**V.    Valdez's Conviction of Firearm Possession by a Felon on Count 5 Shall be Reversed.**

In a supplemental brief, Valdez cites *People v. Mason* (2014) 232 Cal.App.4th 355 (*Mason*), which was handed down by Division One of the Fourth Appellate District nearly three months after Valdez filed his opening brief.  In that case, the defendant Mason was convicted of four counts of firearm possession by a felon, inter alia.  (*Id.* at pp. 357, 364, 366.)  Each count specified a different date of possession (*id.* at pp. 364, 366), and the prosecution theorized Mason possessed the same firearm on each date (*id.* at p. 364).  On appeal, Mason argued the evidence did not support four distinct convictions "because his possession of the firearm was continuous throughout the period covered by the dates in question."  (*Id.* at pp. 364–365.)  The appellate court agreed.  (*Id.* at p. 358.)  It explained:

> "The Supreme Court has recognized that possession of a firearm by a felon is a continuing offense.  [Citations.]  'The concept of a continuing offense is well established.  For present purposes, it may be formulated in the following terms:  "Ordinarily, a continuing offense is marked by a continuing duty in the defendant to do an act which he fails to do.  The offense continues as long as the duty persists, and there is a failure to perform that duty."  [Citations.]  Thus, when the law imposes an affirmative obligation to act, the violation is *complete* at the first instance the elements are met.  It is nevertheless not *completed* as long as the obligation remains unfulfilled.  "The crime achieves no finality until such time." '  [Citation.]

> " 'In the case of continuing offenses, only one violation occurs even though the proscribed conduct may extend over [an] indefinite period.'  [Citations.]  Thus, our Supreme Court recognized more than 70 years ago that the Deadly Weapons Act, from which [section 29800] is derived, 'does not provide that it is an offense for each day that the ex-convict is in possession of the weapon.'  [Citation.]

> "Here, Mason was convicted of four counts of possessing the same firearm, corresponding to four different dates of possession.  Although the evidence showed that Mason possessed the firearm on each of the dates, there was no evidence that Mason's possession of the firearm was anything but continuous over the period encompassing the four dates.  The prosecution did not present evidence, for example, showing that Mason had

18.

relinquished possession of the gun for a period between the specified dates. Mason's crime was complete at the time he first possessed the gun because he violated the duty imposed by the statute not to do so. [Citation.] But the crime continued – as a single offense – for as long as the same possession continued, i.e., so long as Mason continued to violate his duty under the statute. [Citations.]" (*Id.* at pp. 365–366, fn. omitted.)

Consequently, all but one of Mason's convictions were reversed for lack of evidence. (*Id.* at pp. 358, 367.)

The Attorney General concedes Valdez's conviction on count 5 must be reversed and the associated three-year concurrent sentence must be stricken because (1) "[t]here was no evidence that Valdez's possession of the gun was not continuous from December 2 (the day of the shooting) [count 4] to December 11 (the day of the arrest and recovery of the gun) [count 5]"; and (2) "the People did not prove that Valdez possessed two different guns on the two dates." We accept this concession.[15]

## VI. The Abstract of Judgment Contains a Clerical Error That Must be Corrected.

The jury convicted Valdez of second degree robbery on count 1. However, the abstract of judgment mistakenly labels this crime as a violation of sections 187, subdivision (a), and 664. This clerical error must be corrected to show second degree robbery is a violation of section 211. (See *People v. Mitchell* (2001) 26 Cal.4th 181 [courts have inherent power to correct clerical errors in abstracts of judgment].)

## DISPOSITION

Valdez's conviction of firearm possession by a felon on count 5 is reversed. In addition, the abstract of judgment must be amended to reflect Valdez violated Penal Code section 211 – rather than Penal Code sections 187, subdivision (a), and 664 – on count 1. The trial court is directed to prepare a corrected abstract of judgment and transmit copies thereof to the appropriate authorities.

---

[15] Given this disposition, Valdez's alternative argument, i.e., execution of punishment on count 5 should be stayed, becomes moot.

19.

In all other respects, the judgment is affirmed.

_____
POOCHIGIAN, J.

WE CONCUR:


_____
HILL, P.J.


_____
GOMES, J.

20.