Filed 9/23/25  P. v. Kestner CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA KESTNER,<br><br>    Defendant and Appellant. | 2d Crim. No. B337793<br>(Super. Ct. No. MA083775)<br>(Los Angeles County) |

Joshua Kestner appeals from the judgment after a jury convicted him of felon in possession of a firearm (Pen. Code,[1] § 29800, subd. (a)(1); count 1), and prohibited person in possession of ammunition (§ 30305, subd. (a)(1); count 2).  The trial court sentenced Kestner to two years in state prison for count 1, and a concurrent sentence of two years for count 2.

Kestner contends the trial court erred when it failed to instruct the jury sua sponte: (1) that it must unanimously agree which ammunition he possessed, and (2) regarding the defense of

---

[1] All statutory references are to the Penal Code.

momentary possession.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

Sheriff's deputies obtained a search warrant for a house where they believed D.F. lived to obtain evidence of an armed robbery in which he was a suspect.  Before serving the warrant, deputies saw D.F. leave the house, arrested him, and recovered from his person the firearm used in the robbery.

Deputies then searched the house.  Inside were Kestner, Kestner's girlfriend, her father, and her two children.

At 5:03 p.m., a deputy searched an unlocked hallway closet "in a common area of the house."  The closet contained men's clothing, a backpack, and a locked safe.  The clothing was for a larger person than D.F. or the girlfriend's father.  In the backpack was a piece of mail addressed to Kestner.  Also in the closet was a holster containing a Glock pistol, loaded with 10 live .40 caliber bullets.

A deputy asked Kestner for the code to open the safe. Kestner said, "That's not mine."  But when the deputy said they would have to break it open pursuant to the search warrant, Kestner told him the six-digit code.

At 5:21 p.m., a deputy opened the safe using the code Kestner provided.  Inside the safe was a Glock magazine containing 30 live rounds of .40 caliber ammunition that would fit the firearm found in the closet, three boxes of live ammunition of various calibers, firearm parts, and a scale with what appeared to be drug residue.

After being advised of his *Miranda*[2] rights, Kestner admitted the firearm, the safe, and its contents, including the

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

ammunition, were his.  He also admitted a bag containing drugs found in a bedroom he shared with his girlfriend was his.

The parties stipulated Kestner had been previously convicted of felonies.

*Kestner's testimony*

Kestner testified his girlfriend lived at the house.  He did not live there but had stayed there the night before the search.  The clothes in the closet were not his.  He testified the safe was not his but belonged to D.F., who had given Kestner the code for it.  Kestner had never opened or looked inside the safe.  Regarding the piece of mail addressed to him, he "might have used her address as a mailing address . . . for something like maybe like a cash app card or something like that."

Kestner testified the firearm was not his.  He said he made the admissions under *Miranda* because a deputy told him if he did not admit possessing the drugs found in the black bag, they could take away his girlfriend's children.

On cross-examination, Kestner testified he did not remember telling a deputy that D.F. had given him the firearm.  The prosecution then played a video of a conversation between Kestner and a deputy that included the following: Kestner said, "it's not my gun."  He said D.F. did not live at the house but had spent the night there.  Kestner said that in the morning, D.F. "had his guns, and he was like, uh, can you put this in, in the closet by my safe real quick?  I'm gonna run and grab some cigarettes."  Kestner said D.F. " 'was in a hurry, and he handed it to me.' "

After hearing the video at trial, Kestner admitted he made the statements.  On redirect examination, he testified he did not remember how D.F. handed him the firearm, or if it was in a bag,

3

or what time D.F. gave it to him.  On further cross-examination, he said he did not recall if he put the firearm in the closet.  He testified, "obviously someone had to put it there.  It could have been me.  I'm just saying I don't really remember a hundred percent; so I can't tell you yes or no."

## DISCUSSION

### *Unanimity instruction*

Kestner contends count 2 must be reversed because the trial court did not advise the jury sua sponte that it must unanimously agree which ammunition he possessed.  We are not persuaded.

A defendant possesses a prohibited item " 'when it is under his dominion and control.' "  (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1052.)  "[M]ore than one person may possess the same contraband."  (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410.)  The jury here was correctly advised that to be guilty of possession of ammunition, the defendant must know he had custody and control of ammunition.  (CALCRIM No. 2591; *People v. Rubalcava* (2000) 23 Cal.4th 322, 331–332.)

"In a criminal case, a jury verdict must be unanimous." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  "[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act."  (*Ibid*.; see CALCRIM No. 3500.)  "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' "  (*Russo*, at p. 1132.)

We apply the independent standard of review to claims of

4

instructional error.  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 919.)

A unanimity instruction is required where "[t]he different defenses gave the jury a rational basis to distinguish between the various acts."  (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853.)  It applies in possession cases where conviction may be based on more than one item and there are "distinctive facts surrounding defendant's 'possession' of each."  (*People v. Crawford* (1982) 131 Cal.App.3d 591, 599–600 (*Crawford*).)

The prosecution did not elect whether count 2 was based on the ammunition in the loaded firearm, or the ammunition inside the safe.  On the contrary, the prosecutor argued they *both* served as a basis for count 2.  Regarding possession of the loaded firearm, Kestner claimed that D.F. handed him the firearm to put in the closet.  His possession of the ammunition in the safe was based in part on his knowledge of the code and his (later recanted) admission.  Because there are arguably "unique facts" regarding possession of the ammunition located inside the firearm and the ammunition located inside the safe (*Crawford, supra,* 131 Cal.App.3d at p. 599), a unanimity instruction was required.  It was a " 'general principle[] of law relevant to the issues raised by the facts of the case before it.' "  (*People v. Sandoval* (2015) 62 Cal.4th 394, 417; *Crawford,* at p. 596.)

But even if the court erred, we conclude any error was harmless beyond a reasonable doubt.  "Although there is a split of authority on whether the *Chapman* [*v. California* (1967) 386 U.S. 18] standard applies to the failure to give a unanimity instruction, we agree with the majority view that it does."  (*People v. Jones* (2024) 106 Cal.App.5th 1085, 1096.)

Here, the ammunition in the loaded firearm and the

ammunition in the safe were found in the same closet, and within 20 minutes of each other.  Kestner exercised dominion and control over the closet, including the safe, as evidenced by Kestner's backpack and clothing in the closet and his knowledge of the code for the safe.

*People v. Wolfe* (2003) 114 Cal.App.4th 177 is instructive.  There, the Court of Appeal held that failure to give a unanimity instruction regarding possession of several firearms found in a trailer was harmless under *Chapman*.  The defendant made a "damning admission: '[M]y guns are in the light fixtures above the kitchen.' " (*Wolfe*, at p. 188.)  He "presented a unitary defense with respect to all of the firearms—that they belonged to his mother, and he had no dominion or control over them."  (*Ibid*.)

Similarly here, Kestner admitted to police that he possessed both the firearm and the ammunition in the safe.  His defense at trial was that he was coerced into making these statements, had never opened the safe, and did not remember if he put the firearm in the closet.  But the jury found his testimony lacked credibility when it found him guilty of possessing both the firearm and ammunition.  " 'Where the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless.' " (*People v. Curry* (2007) 158 Cal.App.4th 766, 783.)  Reversal is not warranted.

*Momentary possession*

Kestner contends the trial court erred by not instructing the jury sua sponte regarding the defense of momentary possession of the firearm.  We disagree.

The defense of momentary possession is defined in

6

bracketed language in CALCRIM No. 2510. It states the possession of a firearm is not unlawful if the defendant proves they "possessed the firearm only for a momentary or transitory period," "possessed the firearm in order to (abandon[,]/ [or] dispose of[,]/ [or] destroy) it," and "did not intend to prevent law enforcement officials from seizing the firearm."

Kestner did not request a momentary possession instruction and did not mention it during closing argument. But "[a] trial court must instruct the jury, even without a request, on all general principles of law that are ' "closely and openly connected to the facts and that are necessary for the jury's understanding of the case." ' " (*People v. Burney* (2009) 47 Cal.4th 203, 246.) "The duty to instruct sua sponte" includes "defenses that are raised by the evidence." (*People v. Marquez* (1992) 1 Cal.4th 553, 581.) "The court may, however, 'properly refuse an instruction . . . if it is not supported by substantial evidence.' " (*Burney*, at p. 246.) "[T]he court need not give the requested instruction where the supporting evidence is minimal and insubstantial." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145.)

The defense of momentary possession was first described regarding possession of narcotics in *People v. Mijares* (1971) 6 Cal.3d 415. There, the defendant removed a package of heroin from the pocket of a friend who was overdosing and threw it into a field "for the sole purpose of putting an end to the unlawful possession of [his friend]." (*Id.* at p. 420.) The court held that possession of narcotics "does not include merely handling for only brief moments prior to abandoning the narcotic." (*Id.* at p. 423.)

The defense of "temporary possession for disposal" was also discussed regarding a felon's possession of a firearm in *People v.*

7

*Hurtado* (1996) 47 Cal.App.4th 805, 810. There, an 11-year-old boy found a loaded firearm and extra bullets and gave them to the defendant. (*Id*. at p. 808.) The Court of Appeal concluded the trial court erred in instructing on the defense of momentary possession because the defendant's retention of the firearm for at least two days "cannot be characterized as momentary." (*Id*. at p. 814.)

Our Supreme Court recognized the defense in *People v. Martin* (2001) 25 Cal.4th 1180. The court stated, "We agree with the *Hurtado* court that recognition of a 'momentary possession' defense serves the salutary purpose and sound public policy of encouraging disposal and discouraging retention of dangerous items such as controlled substances and firearms." (*Id*. at p. 1191.) In *Martin*, the defendant's girlfriend discovered a packet of drugs in her son's room and gave it to defendant with instructions to " '[g]et rid of it.' " (*Id*. at p. 1183.) But the defendant kept the drugs in his pocket for four hours before the police arrived in response to an altercation at the residence, and for another 40 minutes before police arrested and searched him. (*Id*. at pp. 1192–1193.) The court concluded the defendant was not entitled to a momentary possession instruction because "[t]here is no indication in the record that during these periods defendant made any attempt, or took any physical action, to dispose of the methamphetamine bindle, much less enlist the assistance of the officers in doing so." (*Id*. at p. 1193.)

We conclude substantial evidence did not support giving a momentary possession instruction. While Kestner's statements suggested he only briefly handled the firearm, there was no evidence he possessed it " 'for the purpose of abandonment, disposal, or destruction.' " (*People v. Martin, supra*, 25 Cal.4th at

p. 1190.)  Instead, he simply moved the firearm from one area of the house to another so D.F. could "grab some cigarettes." Kestner placed the firearm in a common area over which he continued to have access.  We reject Kestner's claim of instructional error.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Emily J. Cole, Judge

Superior Court County of Los Angeles

_____

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.