Filed 1/9/19; Opinion following rehearing

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LAURO LOPEZ,<br><br>    Defendant and Appellant. | B282867<br><br>(Los Angeles County<br>Super. Ct. No. BA440645) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Kennedy-Powell, Judge. Affirmed.

    Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

    Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Yun K. Lee and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I, II, and IV of the Discussion Section.

# INTRODUCTION

While driving under the influence of alcohol, appellant Lauro Lopez made a left turn in front of an oncoming motorcycle, hitting and killing the rider. A jury convicted appellant of second degree murder and felony hit and run driving resulting in death or serious injury.

Appellant challenges his conviction in several ways. First, he argues that the trial court erred by admitting evidence of the advisement he received after a prior conviction for driving under the influence. Second, appellant raises several claims of error related to the jury instructions. Third, he contends his conviction on both counts must be overturned due to his counsel's concession at trial that appellant committed the hit and run, coupled with the absence of affirmative evidence that he knowingly waived his constitutional trial rights. Finally, he asserts cumulative error and sentencing error.

In our previous opinion, we reversed the conviction on the hit and run charge based on appellant's argument regarding his counsel's concession. We otherwise affirmed. We then granted respondent's petition for rehearing and received additional briefing on the issue of the concession. Upon reexamination of this issue, we conclude defense counsel's statements during argument were not tantamount to a guilty plea. We therefore affirm the judgment in its entirety.

# PROCEDURAL HISTORY

The Los Angeles County District Attorney charged appellant in an information with one count of second degree murder (Pen. Code, § 187, subd. (a); count one)[1] and one count of

---

[1]All further statutory references herein are to the Penal Code unless otherwise indicated.

felony hit and run driving resulting in death or serious injury to another person (Veh. Code, § 20001, subd. (b)(2); count two). Appellant pled not guilty to both counts and the matter proceeded to jury trial.

The jury found appellant guilty on both counts. The court sentenced appellant to 15 years to life on the murder charge and three years on the hit and run charge, to run consecutively.

Appellant timely appealed. As we have indicated, after we issued our initial opinion, we granted respondent's petition for rehearing on the issue of defense counsel's concession during argument.

## FACTUAL BACKGROUND

The following evidence was adduced at trial.

## I. Prosecution Evidence

### A. *2013 drunk driving conviction*

Appellant was previously arrested for driving under the influence on January 7, 2013. He pled no contest to driving under the influence with a blood alcohol content of .08 percent or higher in violation of Vehicle Code section 23152, subdivision (b), and admitted as part of his plea that his blood alcohol level was actually .20 percent or higher. Before entering his plea, appellant signed a written advisement, which was also read to him by a Spanish interpreter. It included the following *Watson*[2] advisement: "I understand that being under the influence of alcohol or drugs or both impairs my ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs or both. If I continue to drive while under the influence of alcohol or drugs or both, and as a result of my driving someone is killed, I can be

---

[2] *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*).

charged with murder." In addition, during the plea hearing, the judge repeated the *Watson* advisement.

The terms of appellant's plea required him to complete a nine-month alcohol education program and a Mothers Against Drunk Driving (MADD) victim impact program, and barred him from driving without a valid driver's license or with any measurable amount of alcohol in his system. Appellant was placed on probation for three years.

Pursuant to the terms of his plea, appellant completed a nine-month alcohol program starting in February 2013. The program, given in Spanish, included 23 group sessions, six alcoholic education sessions, 10 interviews, and 19 Alcoholics Anonymous meetings. Upon completion, appellant filled out an exit form stating that he would not drink and drive.

In November 2013, appellant also attended a victim impact panel, an educational program for driving under the influence (DUI) offenders. He registered for and completed the course in English. As part of the program, the administrator testified that she discussed the *Watson* advisement with the participants and projected the text on a big screen. She would customarily tell the story of another class participant who attended the class twice and later caused an accident that killed two people.

### B. *2015 accident*

On October 13, 2015 at approximately 7:15 p.m., appellant approached the intersection of Soto Street and 57th Street in Huntington Park. He was driving his white pickup truck and his 29-year-old son was in the passenger seat. Appellant made a left turn onto 57th Street in front of an oncoming motorcycle. He struck the motorcycle, knocking its rider to the ground. Appellant then drove away from the scene.

4

A bystander called 911, reporting that "a guy came, took a left. And nailed a woman or man on a motorcycle." He described the vehicle as a white truck and told the operator where the truck was heading. The 911 call was played for the jury at trial.

Detective Garey Staal of the Huntington Park Police Department (HPPD) testified that he and his partner saw the motorcycle driving on Soto Street before the accident. The motorcycle was travelling a "little faster than the normal traffic but . . . nothing that was concerning as far as speed." They came upon the scene of the accident and saw the same motorcycle on the ground. Detective Staal ran toward the victim on the ground and began performing CPR, assisted by others at the scene. Paramedics arrived less than five minutes later. The victim was transported to the hospital and died shortly thereafter from his injuries.

Staal and his partner gathered a description of the suspect vehicle and its direction of travel from witnesses at the scene; they broadcast that information over their police radio. The detectives also noticed a license plate lying in the street, which appeared to be the front license plate from the suspect vehicle. Staal's partner wrote down the license plate number and gave it to police dispatch; dispatch advised him that the vehicle with that plate number was registered to appellant.

A short time later, a police officer who had heard the collision and then heard about the suspect over the police radio spotted appellant's truck parked in a nearby business parking lot. As the officer walked over to the truck, he noticed appellant and his son standing in a yard next to the vehicle. The officer approached and asked in Spanish if either of them was driving the pickup truck. The officer testified at trial that in response,

5

appellant pointed to his son, who shook his head no. The officer then called for assistance.

HPPD officer Martin Magallanes arrived a few moments later. He noted that the front license plate on appellant's truck was missing and the rear plate matched the number from the plate at the scene. He spoke to appellant in Spanish and testified that he could smell alcohol on appellant's breath. Appellant acknowledged to Magallanes that he had consumed three 24-ounce beers between 5:00 and 6:00 p.m. He stated he did not feel the effects of the alcohol, but Magallanes noticed appellant swaying. Appellant also admitted he had been driving. He told Magallanes that his truck did not have any mechanical problems and he knew he had collided with a motorcycle. He did not ask about the condition of the rider.

Magallanes administered a field sobriety test to appellant, which indicated appellant was impaired. Appellant was also given two breath tests, one at 8:10 and one at 8:12 p.m.; both showed his blood alcohol content was 0.14 percent. That result was confirmed by a blood draw taken at 8:30 p.m.[3] Appellant was arrested.

Magallanes interviewed appellant in jail that evening around 10:00 p.m. Appellant agreed he had "too many beers" and knew driving after drinking was a crime. He said he had one beer at work, then went to the liquor store to get beer, drove home, and drank "two big Modelos" at home. He told Magallanes

---

[3]A prosecution expert opined that any driver would be impaired at the level of .08 percent or above. Given a hypothetical scenario matching the facts of the case, he also opined that the driver's blood alcohol content at the time of the accident would be between 0.14 and 0.16 percent.

6

that he was not planning to leave his house that night, but he decided to drive his son to a friend's house to see about a job. At the time of the accident, he saw the motorcycle approaching but thought he would be able to make the left turn safely before the collision. He did not see the motorcyclist after the crash. Appellant then left the scene because he was scared he would get arrested because he had been drinking. His son told him to remain at the scene. Appellant also stated he was not planning to report the collision that night because he was intoxicated.

HPPD detective Osvaldo Cervantes interviewed appellant on October 14, 2015. Excerpts from the video of that interview were played for the jury. Appellant reiterated that he drank three 24-ounce Modelo beers, finishing about an hour before the accident. When asked if he thought he was drunk, appellant responded, "Well, on the one hand, yes, but on the other hand I think - yes, I was a little. I'm not going to say no. But . . . my kid was going . . . and I thought it easier that I take the truck rather than him." The detectives also asked why appellant drove if he knew he was drunk. He responded, "that was my mistake." He said the admonition he received with his prior conviction was that "I wasn't to drive again with alcohol" and knew he couldn't drive for three years. He also knew he was still on probation from his prior conviction.

Appellant told the detectives that he was "going to make a left turn" and claimed he saw the other driver "coming at a high velocity on his motorcycle. But, there were no cars. He came hard." Appellant thought he was going to be able to turn in front of the motorcycle, but they collided. His son said "Wait Dad!" before the turn, but appellant went ahead because he thought he could beat the motorcycle. After he felt the crash, appellant

reversed his truck to move away from the accident and then left the scene because he was scared. He claimed he did not see the condition of the motorcyclist and did not see him on the ground. His son wanted to get out and check on the victim, but appellant did not stop.

Appellant admitted to the detectives that he thought the victim was hurt and he "came out of it badly." Before they advised appellant that the victim had died, the detectives asked appellant if he wanted to know how serious the victim's injuries were. Appellant responded, "If you want to tell me." He later stated that he was sorry but that it was also the victim's fault because he (the victim) was driving so fast.

## II. Defense evidence

The defense did not call any witnesses and appellant did not testify.

## DISCUSSION

## I. Admission of *Watson* Advisements

At trial, the prosecution proffered evidence of the *Watson* advisements appellant received prior to the 2015 collision, including the written and oral plea advisements from his 2013 DUI plea and the subsequent coursework appellant completed as part of that plea. Prior to trial, the parties and the court acknowledged the relevance and importance of this evidence to establish that appellant knew of the dangers of drinking and driving prior to the collision, and therefore acted with the implied malice required for murder.[4] Appellant now contends this

---

[4]Murder is "the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Malice may be express or implied. (§ 188.) The jury here was instructed with CALCRIM No. 520, which provides that the defendant acted with implied

evidence was admitted in error for two reasons.  First, he argues that by admitting a statement from the prior court that it was "required" to give the *Watson* advisement as part of the plea, the trial court here "created a conclusive presumption" that "as a matter of law, driving under the influence 'is extremely dangerous to human life," thereby directing a verdict on the physical component of implied malice.  Second, he contends the *Watson* advisements admitted at trial were inadmissible hearsay. Respondent counters that both claims are forfeited as appellant failed to raise them below.  We agree that these arguments are forfeited.

Generally, failure to object to the admission of evidence at trial forfeits an appellate claim that such evidence was improperly admitted.  (See Evid. Code, § 353, subd. (a); *People v. Partida* (2005) 37 Cal.4th 428, 435 [defendant on appeal "may not argue that the court should have excluded the evidence for a reason different from his trial objection"]; *People v. Stevens* (2015) 62 Cal.4th 325, 333 [forfeiture of objection to hearsay evidence].) The purpose of requiring a specific objection is to "alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the People an opportunity to establish its admissibility." (*People v. Williams* (1988) 44 Cal.3d 883, 906.)

Here, appellant failed to object below to the admission of the *Watson* advisements on either ground he now asserts.  He did

malice if:  "(1) He intentionally committed an act; (2) The natural and probable consequences of the act were dangerous to human life; (3) At the time he acted, he knew his act was dangerous to human life; and (4) He deliberately acted with conscious disregard for human life."  (See also *Watson, supra,* 30 Cal.3d at p. 295.)

9

object prior to trial to the prosecutor's request to admit the underlying facts of the prior DUI. He also objected during trial to the admission of the plea waiver form, on the basis that it was unclear whether appellant had initialed the *Watson* advisement on the form.[5] He raised no other objections to admission of any of the *Watson* advisement evidence.

Moreover, appellant did not object as both the prosecutor and the court repeatedly stressed the significance of the *Watson* advisements to the issue of appellant's intent. For example, at a pretrial evidentiary hearing, the court denied the prosecutor's request to admit the underlying facts of the prior DUI, but admitted evidence of the plea, advisements, and subsequent education. In doing so, the court noted: "This is a *Watson* murder . . . because of the specific education and knowledge that [appellant] obtained through the *Watson* advisement, through the attendance at the AA meetings and the M.A.D.D. presentation, and all of that. And in the absence of that . . . without the evidence of the advisement and the education . . . the prosecution would not have filed a *Watson* murder in this case." The court therefore ruled that the prior conviction was admissible and "all of the educational aspects and advisements are in." During that hearing, the prosecutor argued that the "central issue in this case is going to be intent; that being implied malice and knowledge of the dangers of driving under the influence resulting in death to another." Defense counsel acknowledged that a lot "of evidence about what Mr. Lopez learned after his arrest [in 2013] is going to come in," and objected only to the admission of the underlying facts of the DUI.

---

[5]In his reply brief, appellant cites only this objection in response to respondent's forfeiture argument.

10

Similarly, when defense counsel objected during trial regarding the unclear initials on the plea waiver, the prosecutor again argued that the evidence "goes to the central issue" of defendant's knowledge regarding drinking and driving. The court overruled appellant's objection. Had appellant objected below on the grounds he now asserts, the trial court could have addressed the asserted errors and the prosecution would have had the chance to cure them. For example, with respect to appellant's claim that the court created a conclusive presumption, the prosecution could have omitted the court's prefatory statement that "I'm required to advise you" from the evidence of the plea. Similarly, with respect to the hearsay objection, the prosecutor could have sought to admit the advisements through an appropriate witness or stipulation.

Appellant also argues that these objections would have been futile. The record does not support this claim. First, regarding his conclusive presumption claim, he suggests that once the trial court overruled his objection regarding the initials on the plea waiver form, "any other *Watson* advisement objection would have been futile." He does not explain why he would have been unable to object to the same evidence on different grounds. Second, with respect to the hearsay objection, appellant acknowledges that the primary case upon which he relies, *People v. Sanchez* (2016) 63 Cal.4th 665, was issued almost a year before his trial. As such, he is not entitled to rely on the rule that an objection is not required when it "is based on a change in the law that the appellant could not reasonably have been expected to foresee." (*Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1334.)

Finally, appellant contends that his assertion of a due process violation flowing from the purported conclusive presumption has not been forfeited. But the cases appellant cites apply only to a narrow subset of due process arguments that may be raised for the first time on appeal. Where new arguments "do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as wrong for the reasons actually presented to that court, had the additional legal consequence of violating the Constitution," then to that limited extent, "defendant's new constitutional arguments are not forfeited on appeal." (*People v. Ervine* (2009) 47 Cal.4th 745, 771, fn. 12; accord *People v. Partida*, *supra*, 37 Cal.4th at p. 435.) This exception to forfeiture does not apply here. Appellant has not merely applied a due process gloss to objections he raised below. Instead, he has raised entirely new objections and included a due process claim. Under these circumstances, appellant has forfeited his objections to the *Watson* advisements.

## II.    Jury Instructions

Appellant raises three separate claims of instructional error related to his murder conviction. First, he asserts that the trial court incorrectly instructed the jury on the definition of implied malice. Second, he argues the court had a sua sponte duty to give a unanimity instruction as to the two separate acts that could have served as the basis for a murder conviction. Finally, he claims the trial court erred in refusing to instruct on lesser included offenses. We review such claims de novo. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1210; *People v. Waidla* (2000) 22 Cal.4th 690, 739 [de novo review of failure to instruct on lesser-included offense].)

12

## A.     *Definition of implied malice*

Appellant challenges the court's instruction to the jury on implied malice.  The trial court instructed the jury with CALCRIM No. 520, which provides, in pertinent part, that a defendant acted with implied malice if he or she committed an act and the "natural and probable consequences of the act were dangerous to human life."  Appellant did not object to this portion of the instruction at trial.

Our Supreme Court has explained that two lines of decisions have developed reflecting judicial attempts to "'translate this amorphous anatomical characterization of implied malice into a tangible standard a jury can apply.'"  (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 103 (*Nieto Benitez*).)  As a result, the physical component of implied malice can be phrased in two ways.  (*Id*. at pp. 103-104; *People v. Watson*, *supra*, 30 Cal.3d at p. 300.)  In one formulation, implied malice exists when a person commits "an act, the natural consequences of which are dangerous to life."  (*Nieto Benitez, supra*, 4 Cal.4th at p. 104.)  In the alternate formulation, malice may be implied when a person "does an act with a high probability that it will result in death."  (*Ibid*., citing *People v. Thomas* (1953) 41 Cal.2d 470, 480 (*Thomas*).)

Appellant contends the trial court erred by failing to instruct the jury with the *Thomas* formulation of implied malice "at a minimum":  that the defendant commit an act "with a high probability that it will result in death."  This argument has been squarely rejected by our Supreme Court, which has consistently upheld the formulation reflected in CALCRIM No. 520 and given here.  For example, in *Nieto Benitez, supra*, 4 Cal.4th at p. 111, the court rejected the argument that the standard implied malice

13

instruction was faulty because it did not state "a requirement that [the] defendant commit the act with a high probability that death will result." The *Nieto Benitez* court confirmed that the instruction stated an "equivalent" standard by requiring that the defendant commit "an act whose 'natural consequences' are dangerous to life." (*Ibid.*; see also *People v. Dellinger* (1989) 49 Cal.3d 1212, 1219 [the two definitions of implied malice state "one and the same standard"]; *Watson, supra*, 30 Cal.3d at p. 300.)

We are bound to follow these Supreme Court decisions upholding the use of CALCRIM No. 520. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We therefore reject appellant's argument that the high court's conclusion that the two standards are one and the same "does violence to the meaning of ordinary definitions of words." The trial court's instruction here was consistent with the controlling authorities; thus, we find no error in its usage.

### B. *Unanimity instruction*

Appellant contends that the trial court erred in failing to give a unanimity instruction to the jury. Specifically, he claims that because the evidence established "two separate and distinct acts of driving under the influence"—first, appellant's driving from his home and causing the accident, and second, his driving away from the accident, refusing to stop, and failing to render aid—the jury could have found him guilty of murder based on either act, and may not have unanimously agreed as to one of them. We conclude no unanimity instruction was required.

A jury verdict must be unanimous in a criminal case. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Thus, "[w]hen an accusatory pleading charges the defendant with a single criminal

14

act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.) The unanimity requirement "'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.]" (*People v. Russo, supra*, 25 Cal.4th at p. 1132.) Where required, a unanimity instruction must be given sua sponte. (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 274–275.)

Here, a unanimity instruction was not required because there was insufficient evidence in the record from which the jury could have found appellant guilty of second degree murder based on his post-accident conduct alone. (See *People v. Burns* (1987) 196 Cal.App.3d 1440, 1458 ["'If under the evidence presented such disagreement is not reasonably possible, the instruction is unnecessary.'"].) Specifically, we are not persuaded by appellant's contention that the jury could have found implied malice required for the murder charge based on his post-accident conduct. Appellant cites no authority in support of this proposition. His citation to *People v. Cravens* (2012) 53 Cal.4th 500 (*Cravens*) is inapposite. In *Cravens*, the court found substantial evidence to support a second-degree murder conviction for a defendant who delivered a deadly sucker punch at the end of a group fight. (*Id.* at pp. 508-511.) In upholding the jury's finding of implied malice, the court relied on the circumstances of the attack, as well as defendant's conduct both before and after the fight, noting that his post-accident

callousness "bolstered the finding of implied malice."  (*Id*. at p. 511.)

Similarly, here, there was extensive evidence (discussed at length by the prosecutor in closing argument) of appellant's pre-accident knowledge of the dangers of drinking and driving, his decision to drive while impaired on the day of the accident, and his decision to turn in front of the motorcyclist, supporting a conclusion that appellant acted with implied malice at the time of the accident.  Notably, the prosecutor argued that the victim's death occurred because appellant "made decisions that night, knowing that they would result in hurting or killing another person, and said, 'I'll take the risk.'"  She also argued that appellant's conduct in leaving the scene bolstered the showing of his disregard for human life.  She did not suggest, however, that the jury could find implied malice based solely on appellant's post-accident conduct.  To the contrary, in her rebuttal argument, she stated that the test for implied malice was "what was the defendant's state of mind before he committed that act?"

Moreover, appellant's counsel argued several times that his post-accident conduct was irrelevant to the malice inquiry.  He told the jury that "the question isn't what happened after the accident; it's malice aforethought. . . .  The question is what was going on in his head before the accident."

We also reject appellant's argument that "nothing in the jury instructions prohibited the jury from finding implied malice based solely on defendant's post-accident conduct and mental state."  The jury was instructed with CALCRIM No. 520, providing that the prosecution must prove that "when the defendant acted, he had a state of mind called malice aforethought," and that implied malice required a finding that "at

16

the time he acted, he knew his act was dangerous to human life." Further, at appellant's request and over the prosecutor's objection, the court modified the instruction to include the following factors that the jury could consider to determine whether appellant acted with implied malice: "(1) A blood alcohol level above the legal limit of .08 percent; (2) Whether there is evidence of pre-drinking intent to drive; (3) Defendant's knowledge of the hazards of driving while intoxicated or under the influence of alcohol; (4) Highly dangerous driving." Notably, these factors focus on evidence prior to or at the time of the accident. We also note that the jury was instructed with CALCRIM No. 372, which provides that evidence of a defendant's flight after the crime "may show that he was aware of his guilt," but "cannot prove guilt by itself." As such, the record does not support appellant's assertion that the jury could have based its second degree murder verdict on his post-accident conduct alone.

Thus, because it was not reasonably possible that the jury disagreed as to what conduct supported a finding of murder, no unanimity instruction was necessary. (See, e.g., *People v. Brown* (1991) 234 Cal.App.3d 918, 935 ["a unanimity instruction is unnecessary 'unless there is evidence based on which reasonable jurors could disagree as to which act the defendant committed' [citation]"].) Appellant's citations to cases involving unanimity instructions for other crimes are inapposite. (See *People v. Crawford* (1982) 131 Cal.App.3d 591 [possession of multiple firearms]; *People v. Scofield* (1928) 203 Cal. 703, 709-710 [five different ways to violate hit and run statute]; *People v. McNeill* (1980) 112 Cal.App.3d 330, 335 [four similar acts of assault on different victims].)

## C. *Lesser included offenses*

Appellant requested jury instructions on the following lesser included offenses to murder: vehicular manslaughter (§ 192, subd. (c)), vehicular manslaughter while intoxicated (§ 191.5, subd. (b)), and gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a).) The prosecution objected and the trial court denied the request, finding that those crimes were not lesser included offenses as they did not share all the elements of second degree murder; thus, the court had no authority to give them without the prosecutor's consent. Appellant contends this was error. We disagree.

Generally, when a defendant is charged with a crime, the trial court must instruct the jury on any lesser included offenses that are supported by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117; see also *People v. Reed* (2006) 38 Cal.4th 1224, 1227–1228.) Conversely, "California law does not permit a court to instruct on an uncharged lesser-*related* crime unless agreed to by the prosecution." (*People v. Valentine* (2006) 143 Cal.App.4th 1383, 1387 (emphasis added), citing *People v. Birks, supra*, 19 Cal.4th at p. 136.)

In a second-degree murder charge, "Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger." (*People v.*

18

*Elmore* (2014) 59 Cal.4th 121, 133.) In contrast, manslaughter is "the unlawful killing of a human being without malice." (§ 192, subd. (b).) Vehicular manslaughter is a specific type of manslaughter, involving "driving a vehicle in the commission of an unlawful act, not amounting to a felony [and with/without] gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, [and with/without] gross negligence." (§ 192, subd. (c).) Gross vehicular manslaughter while intoxicated is "the unlawful killing of a human being without malice . . . in the driving of a vehicle, where the driving was in violation of [DUI laws], and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence." (§ 191.5, subd. (a).) Vehicular manslaughter while intoxicated is the same act, without gross negligence. (§ 191.5, subd. (b).)

Numerous courts have rejected the argument raised by appellant here, that vehicular manslaughter, vehicular manslaughter while intoxicated, and gross vehicular manslaughter while intoxicated are lesser included offenses to second degree murder. In *People v. Sanchez* (2001) 24 Cal.4th 983, 990, overruled on another point in *People v. Reed* (2006) 38 Cal.4th 1224, 1228-1229, the Supreme Court considered whether "the settled practice of treating manslaughter as an offense necessarily included within murder should be extended" to vehicular manslaughter crimes. The defendant was convicted of murder and gross vehicular manslaughter while intoxicated; he argued that the vehicular manslaughter charge was necessarily

19

included within the murder charge, and he could not be convicted of both. (*Id*. at p. 990.) Comparing the elements of the charges, the Supreme Court found that the "statutory elements of murder do not include all the elements of the lesser offense. Gross vehicular manslaughter while intoxicated requires proof of elements that need not be proved when the charge is murder, namely, use of a vehicle and intoxication." (*Id*. at p. 989.) Since a second-degree (implied malice) murder conviction does not necessarily require proof of either of those two elements, the court concluded that the lesser crime was not necessarily included within the greater. (*Id*. at pp. 992-993; see also *People v. Wolfe* (2018) 20 Cal.App.5th 673, 685–686 [no error in trial court's refusal to instruct on involuntary and/or gross vehicular manslaughter as neither was a lesser included offense and prosecution had not agreed to instructions on lesser related offenses].)

Appellant acknowledges that these vehicular manslaughter crimes are not lesser included offenses to murder based on a comparison of their elements (the "elements" test). However, he urges us to apply the "accusatory pleading" test, under which the court looks to whether "'the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified [some] lesser offense is necessarily committed.'" (*People v. Montoya* (2004) 33 Cal.4th 1031, 1035 (*Montoya*).) He further argues we may look beyond the pleading itself, to evidence adduced at the preliminary hearing, which "establishes all three types of vehicular manslaughter." A similar argument was rejected, however, by the court in *Montoya*, which considered "*only* the pleading for the greater offense." (*Id*. at p. 1036.)

20

Notably, the *Montoya* court disapproved a contrary holding in *People v. Rush* (1993) 16 Cal.App.4th 20. (*Montoya, supra*, 33 Cal.4th at p. 1036, fn. 4.) In *People v. Rush*, the information alleged one count of robbery and one count of grand theft of a motor vehicle, both on the same date and involving the same victim. (*Rush, supra*, at p. 27.) The court noted that "[t]he pleading contained no further recitation of a connection between the offenses; however, the evidence at the preliminary hearing and at trial unequivocally established that the automobile was part of the loot stolen in the robbery." (*Ibid*.) As such, the court in *Rush* concluded that the pleading for the greater offense included the requisite allegations for the lesser offense. (*Ibid*.)

Here, appellant advances the same argument as that made in *Rush* and disapproved by *Montoya*. The information here alleged in count one that on or about October 13, 2015, appellant murdered the victim with malice aforethought; in count two, it alleged that on the same date, appellant committed hit and run driving resulting in death or serious injury to an unnamed person. The pleading contains no further information connecting the two crimes. As such, appellant necessarily argues that we must also look to the preliminary hearing transcript. We decline to do so under *Montoya* and its progeny. "Consistent with the primary function of the accusatory pleading test—to determine whether a defendant is entitled to instruction on a lesser uncharged offense—we consider only the pleading for the greater offense." (*Montoya, supra*, 33 Cal.4th at p. 1036; see also *People v. Smith* (2013) 57 Cal.4th 232, 244 [court "need only examine the accusatory pleading"]; *People v. Chaney* (2005) 131 Cal.App.4th 253, 257 ["'to determine whether a defendant is entitled to instruction on a lesser uncharged offense—we consider only the

pleading for the greater offense'"].) Appellant's reliance on *People v. Ortega* (2015) 240 Cal.App.4th 956, 968, which looked beyond the accusatory pleading, is therefore inapposite. (See *People v. Macias* (2018) 26 Cal.App.5th 957, 964 (rejecting *Ortega's* "'expanded accusatory pleading test'" as contrary to *Montoya*).)

Appellant next argues that, even if the uncharged crimes were lesser related rather than lesser included offenses, the trial court nevertheless erred in refusing to instruct on the elements of those offenses. He claims such instructions were necessary to allow the jury to compare the elements of the crimes to "determine whether the prosecution only proved some form of vehicular manslaughter instead of implied malice murder."

In essence, appellant contends that he has a right to have the jury instructed on the elements of uncharged crimes in order to urge the jury that he is not guilty of the charged offense but that he is guilty of something else. An accused is not "entitled to instructions on offenses for which he is not charged in order to urge the jury that he could have been convicted of something other than what is alleged." (*People v. Valentine*, *supra*, 143 Cal.App.4th at p. 1387.) Unsurprisingly, appellant cites no authority to support this proposition. Moreover, we note that while the court refused to instruct the jury on the elements of three uncharged lesser related offenses, it did allow defense counsel to argue about lesser charges that could have been brought. Defense counsel did so, arguing that there were "a myriad" of other crimes appellant could have been charged with, including manslaughter and gross vehicular manslaughter while intoxicated. As to each, he argued that appellant "did it; he is not charged with it." In sum, we conclude appellant has failed to

22

demonstrate error as to the trial court's refusal to instruct the jury on the uncharged vehicular manslaughter offenses.

### III. Defense Counsel's Concession of Hit and Run

During his opening statement and closing argument, defense counsel conceded appellant's guilt as to the second count of felony hit and run, focusing instead on the murder count. Appellant argues that his counsel's concession was tantamount to a guilty plea on that count. Further, because the record is silent as to whether appellant knowingly waived his right to trial on the hit and run, he contends the absence of a valid waiver requires reversal. He asserts that this error infected his murder conviction as well. We conclude counsel's concession was not the equivalent of a guilty plea; therefore, no waiver was required.

#### A. *Factual background*

Defense counsel's opening statement included an unequivocal concession on the hit and run count. He stated that appellant "caused the accident. No dispute. And then he drove away." A few moments later, he conceded, "As to the hit and run, he's guilty of it; I'll say that again at the end. There are no games being played here. . . . But he's not guilty of murder." The remainder of the defense opening statement focused on the murder charge.

Similarly, in closing argument, defense counsel focused solely on the murder charge, stating that as to the hit and run charge, "I've never disputed it. He's guilty of it; he should be punished for it." In her closing, the prosecutor noted that she would not "touch on the second count, the hit and run; I think that's very obvious that he is guilty of that count."

23

**B.** *Effect on hit and run conviction*

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. [Citation.] As a prophylactic measure, the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each." (*People v. Cross* (2015) 61 Cal.4th 164, 170.) Accordingly, in the event of a guilty plea or other conduct tantamount to a plea, "the record must demonstrate that the defendant voluntarily and intelligently waived his constitutional trial rights." (*People v. Farwell* (2018) 5 Cal.5th 295, 300 (*Farwell*).)

The starting point for our analysis, therefore, is whether defense counsel's concession of guilt during argument on the hit and run charge was tantamount to a guilty plea. If not, there was no error. If so, the concession was permissible only if based on a knowing and informed waiver by appellant of his right to trial on that count. (See *McCoy v. Louisiana* (2018) __U.S.__, 138 S.Ct. 1500, 1508 (*McCoy*).)[6]

Respondent contends we are bound by our Supreme Court's conclusion on a similar partial concession of guilt in *People v. Cain* (1995) 10 Cal.4th 1, 39 (*Cain*), overruled on other grounds in *People v. Moon* (2005) 37 Cal.4th 1, 17. We agree. In *Cain*,

_____

[6]Both *McCoy* and *Farwell, supra,* 5 Cal.5th 295 were published after the parties had completed briefing in this appeal. We granted appellant's request to allow the parties to submit supplemental letter briefs addressing *McCoy*. We also requested and received supplemental briefing addressing *Farwell*. The parties provided additional discussion of both cases in their briefing on respondent's request for rehearing.

24

defense counsel told the jury during argument that the defendant was guilty of burglary and multiple felony murder. (*Id.* at pp. 29-30.) On appeal, the defendant argued that these statements were the equivalent of a guilty plea on those charges, and therefore that the trial court was required to obtain a plea waiver. (*Id.* at p. 30.) The court rejected this argument, holding that "trial counsel's decision not to contest, and even expressly to concede, guilt on one or more charges at the guilt phase of a capital trial is not tantamount to a guilty plea." (*Ibid.*) The Supreme Court has reiterated this holding in numerous cases. (See *People v. Lucas* (1995) 12 Cal.4th 415, 446 ["It is [ ] settled that counsel's concession of guilt on one or more charges at the guilt phase of a capital trial is not the equivalent of a guilty plea, requiring defendant's express waiver."]; *People v. Freeman* (1994) 8 Cal.4th 450, 497; *People v. Griffin* (1988) 46 Cal.3d 1011, 1029, disapproved on other grounds by *People v. Riccardi* (2012) 758, 824, fn. 32, *People v. Hendricks* (1987) 43 Cal.3d 584, 592-594 (*Hendricks*).)[7]

Appellant contends his counsel's concession was the equivalent of a guilty plea on count two, arguing that the concession effectively admitted all of the elements of the hit and run and relieved the prosecution of its burden of proof on that count. He cites *Farwell, supra,* 5 Cal.5th 295 in support of this proposition. We find *Farwell* distinguishable. There, the

---

[7]Appellant notes that these cases all are capital cases. While the relevant holdings are therefore in the context of the guilt phase of a capital trial, we see no basis to limit the holding to capital cases, nor has appellant suggested any. Appellant also asserts that these cases are factually and legally distinguishable, but has not identified any material distinguishing features.

defendant was charged with gross vehicular manslaughter and misdemeanor driving with a suspended license. (*Id.* at p. 298.) During trial, the parties entered into a stipulation admitting all the elements of the misdemeanor charge; the court later instructed the jury that it must accept the stipulated facts as true. (*Id.* at pp. 298-299.) The court did not advise the defendant "of the constitutional rights implicated by a guilty plea or the stipulation. Nor did it solicit a personal waiver of those rights." (*Id.* at p. 299.) Crucially, the Supreme Court found that a "stipulation that admits all of the elements of a charged crime necessary for a conviction is tantamount to a guilty plea." (*Ibid.*) The court reasoned that Farwell's "stipulation conclusively established the stipulated facts as true and completely relieved the prosecution of its burden of proof on count 2. While the jury was still required to return a verdict on that count, its limited function did not amount to a jury trial in the constitutional sense." (*Id.* at p. 300.) Thus, because the stipulation conclusively established all of the elements of the misdemeanor, it made "the guilty verdict a foregone conclusion." (*Id.* at pp. 307–308.)

Conversely, here, there was no stipulation admitting the elements of the hit and run as an evidentiary matter. Instead, the jury was instructed that the prosecution had to prove guilt on all counts beyond a reasonable doubt and that statements by counsel were not evidence. Thus, the prosecution was still required to present "competent, admissible evidence establishing the essential elements" of each charge. (*Florida v. Nixon* (2004) 543 U.S. 175, 188.) The prosecutor's remark during closing argument that appellant's guilt on the hit and run was "obvious" and decision not to argue the evidence on that count did not

change the burden of proof, nor did it limit the scope of the jury's role.

Appellant cites no authority extending the rationale of *Farwell* to a case such as this one, concerning a concession made during closing argument. Indeed, courts have repeatedly distinguished between such circumstances and a guilty plea or its equivalent.  (See *Florida v. Nixon, supra,* 543 U.S. at p. 188 [holding concession not tantamount to guilty plea because defendant "retained the rights accorded a defendant in a criminal trial"]; *Boykin v. Alabama* (1969) 395 U.S. 238, 242-243, and fn. 4 [guilty plea is "more than a confession which admits that the accused did various acts," it is a "stipulation that no proof by the prosecution need be advanced"]; cf. *Brookhart v. Janis* (1966) 384 U.S. 1, 3 [waiver required where defense agreed that the prosecution need only prove a "prima facie case," that the case would not be contested, and the defendant would not cross-examine witnesses].)  As the court explained in *Hendricks, supra,* 43 Cal.3d 584, the rationale of the waiver requirement "'is to "assure that the record demonstrably discloses the defendant knows of and voluntarily waives the three specified rights . . . surrendered by a guilty plea." [Citations.]  Th[is] mandate . . . applies only to pleas of guilty and situations tantamount to a plea of guilty.  [Citation.]  Nothing in our decisions . . . indicates that the principles expressed therein were intended to apply to jury trials, even where the evidence of guilt is overwhelming.  When a defendant undergoes a jury trial any competent defense counsel will inform him of his right to call witnesses on his own behalf, of his right to testify or not to testify, and, in the absence of unusual circumstances, will cross-examine the witnesses for the prosecution.'"  (*Id.* at p. 592.)  As such, the waiver requirement

"applies only when the defendant agrees to a submission procedure, such as a guilty plea or a submission on the preliminary hearing transcript, by virtue of which he surrenders one or more of the three specified rights. Second, there is no such surrender when the defendant undergoes - and thereby exercises his right to - a jury trial and has the opportunity to cross-examine the witnesses against him and to refuse to incriminate himself." (*Id*. at pp. 592–593.)  Here, the record reflects no such surrender of appellant's rights; thus, we cannot conclude counsel's concession was the equivalent of a guilty plea.

Appellant also argues that this case should be guided by *McCoy, supra,* 138 S.Ct. 1500.  In *McCoy*, defense counsel informed defendant of his plan to concede guilt on the commission of three murders in an attempt to avoid a death sentence for defendant.  (*McCoy, supra*, 138 S.Ct. at p. 1506.) The defendant insisted he did not commit the murders and adamantly objected to any admission of guilt.  (*Ibid*.)  During his opening statement and closing argument, over defendant's objection, defense counsel told the jury the evidence was "unambiguous," that defendant "committed three murders."  (*Id*. at p 1507.)

The Supreme Court concluded that "counsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission."  (*McCoy*, *supra*, 138 S. Ct. at p. 1510.)  As the *McCoy* court noted, "[s]ome decisions . . . are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal."  (*Id*. at 1508.)

Here, unlike in *McCoy*, there is no evidence that appellant raised any objection to his counsel's decision to concede guilt on

28

the hit and run charge. Nevertheless, appellant urges us to apply *McCoy's* analysis of a defendant's constitutional right to control the objectives of his or her own defense to cases, such as this one, where the defendant has not expressly raised an objection. We conclude such an extension is not supported by the controlling authority. In fact, the court in *McCoy* explicitly distinguished *Florida v. Nixon*, *supra*, 543 U.S. at p. 186, in which defense counsel several times explained to the defendant a proposed concession strategy, but the defendant was unresponsive. The *Nixon* court held that "when counsel confers with the defendant and the defendant remains silent, neither approving nor protesting counsel's proposed concession strategy, '[no] blanket rule demand[s] the defendant's explicit consent' to implementation of that strategy." (*McCoy, supra*, 138 S.Ct. at p. 1505, quoting *Nixon, supra*, 543 U.S. at p. 192.)

This analysis is consistent with our Supreme Court's holding in *Cain, supra*, 10 Cal.4th at p. 30 and similar cases. In *Cain*, the court held it was "not the trial court's duty to inquire whether the defendant agrees with his counsel's decision to make a concession, at least where, as here, there is no explicit indication the defendant disagrees with his attorney's tactical approach to presenting the defense." (*Ibid.*, citing *People v. Freeman, supra*, 8 Cal.4th at p. 497; *People v. Griffin, supra*, 46 Cal.3d at p. 1029; *People v. Hendricks, supra*, 43 Cal.3d at 593-594; see also *People v. Frierson* (1985) 39 Cal.3d 80, 818, fn. 8 ["nothing in this opinion is intended to suggest that - in the absence of such an express conflict [between defendant and counsel] - a court is required to obtain an on-the-record, personal waiver from the defendant"].) In sum, we have found no authority, nor has appellant cited any, allowing extension of

*McCoy's* holding to a situation where the defendant does not expressly disagree with a decision relating to his right to control the objective of his defense.

Finally, to the extent appellant contends his counsel's concessions constituted ineffective assistance of counsel, we are not persuaded. The court in *Cain* squarely rejected this argument, noting, "'[t]o the extent defendant is arguing that it is necessarily incompetence for an attorney to concede his or her client's guilt of murder [or burglary and murder as in this case], the law is otherwise.' [Citation.] Furthermore, as pointed out above, the record does not demonstrate counsel ignored 'any express wish on defendant's part to present an active defense' with regard to either the felony-murder or burglary counts." (*Cain, supra*, 10 Cal.4th at pp. 30–31.) In addition, appellant cannot show that counsel's decision was outside the range of reasonable tactical decisions, particularly given the largely undisputed evidence as to the hit and run charge and the seriousness of the murder charge. (See, e.g., *People v. Freeman, supra,* 8 Cal.4th at p. 498 ["Recognizing the importance of maintaining credibility before the jury, we have repeatedly rejected claims that counsel was ineffective in conceding various degrees of guilt."].) This result is unchanged by appellant's claim that the decision was unreasonable because of the "obvious 'implied malice' implications" of the concession. We have already rejected the suggestion that the jury could have found implied malice to support the murder charge based on the same post-accident conduct supporting the hit and run charge.

Therefore, we affirm the conviction on the hit and run charge.[8]

## IV. Section 654 Error

Appellant argues that his convictions for hit and run driving and murder were based on the commission of "a single act of driving under the influence," and therefore that the court should have stayed the sentence on his hit and run conviction under section 654. We disagree.

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." It "precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) The defendant's intent and objective, not the temporal proximity of his or her offenses, determine whether multiple offenses constitute an indivisible course of conduct. (*People v. Hicks* (1993) 6 Cal.4th 784, 789.) A defendant who acts pursuant to a single objective may be found to have harbored a single intent and therefore may be punished only once. (*Ibid.*) If, on the other hand, defendant harbored "multiple criminal objectives," which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, "even though the violations shared common acts or were parts of an otherwise indivisible course of

---

[8]In light of this conclusion, we need not reach appellant's argument that his counsel's concession of guilt as to the hit and run charge requires reversal of the murder conviction.

conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, disapproved on other grounds by *People v. Mendoza* (2000) 23 Cal.4th 896.)

"The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312; see also *People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) We view the evidence in the light most favorable to the sentence and presume in support thereof the existence of every fact the trier of fact reasonably could deduce from the evidence. (*People v. Hutchins*, *supra*, at pp. 1312-1313.)

In *People v. Butler* (1986) 184 Cal.App.3d 469 (*Butler*), the court rejected the application of section 654 under similar circumstances. There, the defendant was convicted of vehicular manslaughter and felony hit and run arising out of a drunk driving incident. (*Id*. at p. 471.) On appeal, he argued that he had engaged in "one indivisible course of conduct" by driving under the influence of alcohol, causing a fatal accident, and then fleeing the scene. (*Id*. at p. 472.) The court disagreed, concluding that there was "a divisible course of conduct based upon the intent and objective of defendant. . . . In the act of vehicular manslaughter, defendant was acting with general intent; he negligently drove a motor vehicle while under the influence of alcohol and caused a fatal accident. Defendant then violated Vehicle Code section 20001 by intentionally leaving the scene of the accident instead of remaining and rendering aid." (*Id*. at pp. 473-474.) The court found that defendant's intent in fleeing the

32

scene was "to flee in an attempt to conceal his identity and his state of inebriation." (*Id*. at p. 474.)

Similarly, here, the evidence supports the conclusion that appellant acted with multiple objectives and therefore engaged in a divisible course of conduct. Indeed, appellant himself identified a different objective for count two—admitting to police that he fled the scene in order to avoid arrest because he had been drinking and driving.

Appellant argues that *Butler* is distinguishable because "the hit and run may have been used by the jury to establish implied malice." We rejected appellant's contention that the jury could have based the murder conviction on his act of leaving the crime scene in section II.B. *ante*. We find the court's reasoning in *Butler* squarely applicable to this case. Accordingly, section 654 does not preclude multiple punishment here.

## V.    Cumulative Error

Appellant also contends that the cumulative effect of the errors he has identified requires reversal of the murder conviction. Because we found no errors, we reject this claim.

### DISPOSITION

The judgment is affirmed.

COLLINS, J.

We concur:

MANELLA, P. J.                          MICON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.